Entered on Docket
April 29, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: April 29, 2010

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                                No. 09-43869 EDJ
                                                     Chapter 7
KONSTANTINOS ANASTASIOS DIMOYANNIS,

                            Debtor./

KONSTANTINOS ANASTASIOS DIMOYANNIS,                  Adv. No. 09-04339 AJ

                            Plaintiff,

vs.

SALLIE MAE SERVICING,

                            Defendant./

DECISION: COMPLAINT TO DISCHARGE STUDENT LOAN OBLIGATION

Trial was held in the above-captioned adversary proceeding on March 3, 2010. Plaintiff Konstantinos Dimoyannis ("Dimoyannis") appeared on his own behalf. Miriam Hiser appeared on behalf of Educational Credit Management Corporation ("ECMC"), successor in interest to defendant Sallie Mae Servicing. By his complaint, Dimoyannis seeks to have certain student loan obligations discharged

Decision

through his chapter 7 bankruptcy case.  The court, having considered the evidence presented at trial, having reviewed the post-trial briefs submitted by the parties, and for the reasons hereinafter discussed, will enter its judgment against Dimoyannis and in favor of ECMC.

I. Background

Dimoyannis is a 62 year old man with no dependants whose income is comprised of a part time salary earned as a retail sales associate and modest social security benefits.  Dimoyannis earned two degrees from San Francisco State University: a Bachelor's degree in 1991, and a Master's of Economics degree 1996.  He financed his education through student loans funded by the Department of Education; ECMC now holds Dimoyannis' consolidated note.  The sum presently owed to ECMC has grown to some $107,000.

After earning his Master's degree, Dimoyannis was employed for a period of approximately four years as an Economic Research Analyst in the Division of Labor Statistics and Research of the Department of Industrial Relations for the State of California.  He was terminated in 2002 for cause, and has since been unsuccessful in obtaining employment that utilizes his Masters degree.  Due to chronic under-employment, Dimoyannis has been unable to repay his student loan obligation.

In 2001, Dimoyannis filed a petition under chapter 13 of the Bankruptcy Code.  (Case no. 01-40233 RJN.)  Dimoyannis performed under a confirmed plan and received a discharge in 2004.  No payments were made on the student loan obligation during that time.

Case: 09-04339    Doc# 17    Filed: 04/29/10    Entered: 04/29/10 19:06:35    Page 2 of 9

On May 7, 2009, Dimoyannis filed a petition in bankruptcy under chapter 7 of the code. This adversary proceeding followed.

II. Discussion

Bankruptcy Code § 523(a)(8) provides that qualified education loans are excepted from a debtor's discharge, unless such exception would impose an undue hardship on the debtor and the debtor's dependants. 11 U.S.C. §523(a)(8)[1]. The Ninth Circuit has adopted a three-part test laid out by the Second Circuit in In re Brunner that the debtor must satisfy in order to demonstrate undue hardship within the meaning of § 523(a)(8). *See* United Student Aid Funds, Inc. v. Pena, 155 F.3d 1108, 1112 (9th Cir. 1998) (adopting the Second Circuit test laid out in Brunner v. New York State Higher Educ. Svcs., 46 B.R. 752, 758 (D.C.N.Y. 1985), *aff'd* 831 F.2d 395, 396 (2nd Cir. 1987)). The Brunner test requires that the debtor establish three elements: 1) that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependants, 2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period, and 3) that the debtor has made good faith efforts to repay the loans. *See* Brunner, 831 F.2d at 396.

To determine whether Dimoyannis is capable of maintaining a minimal standard of living, the court must examine his finances.

---

[1] Unless otherwise indicated, all future section references are to 11 U.S.C. §101, et seq.

*See* Education Credit Management Corporation v. Howe, 319 B.R. 886, 890 (9th Cir. BAP 2005). The burden of proving the three Brunner elements and therefore demonstrating undue hardship is on the debtor. *See* Rifino v. United States, et al., 245 F.3d 1083, 1087-88 (9th Cir. 2001).

At trial, Dimoyannis testified that although he has made a diligent effort to obtain employment in his field, he has been unsuccessful due to the prior "for cause" termination by the State of California. Dimoyannis testified that the termination effectively barred him from finding work with the State of California or its municipalities. He has also been unable to find work in the private sector that utilizes his degree. Dimoyannis is currently employed part-time as a sales associate at a Sears department store.

Dimoyannis testified that his gross annual income from part-time employment is approximately $14,000. Although Dimoyannis did not directly testify as to his net monthly income, the court can surmise that it is something less than $1,167$^2$. Dimoyannis also introduced evidence that, as of January 2010, he receives $696 per month in social security benefits, bringing his total net monthly

---

[2] $14,000 divided by twelve is $1,166.66. According to IRS form 1040 (*available at* http://www.irs.gov/pub/irs-pdf/f1040.pdf) the 2009 standard deduction for a single taxpayer was $5,700 and the personal exemption amount was $3,650. *See* 26 U.S.C. §§ 63, 151. This suggests that $9,350 of Dimoyannis' income is earned tax-free, and the remaining $4,650 is subject to income taxation.

Decision 4

income to roughly $1,800.  He testified that his monthly expenses include $900 in rent, $150 in utilities, $25 for an internet connection, and $150 for food.  This leaves Dimoynannis with a monthly surplus of over $500.

The court is sympathetic to the fact that Dimoyannis lives very frugally in order to remain within his means.  He testified that he does not smoke or drink, does not own a functioning automobile, and has delayed certain medical treatment because he does not have health insurance or the funds to pay for such treatment out of pocket.  Although Dimoyannis is certainly living modestly, he does appear to be capable of living, on a month by month basis, on the income he earns through working and via social security benefits. The Ninth Circuit BAP, in In re Howe, stated that, "a minimal standard of living under § 523(a)(8) does not equate to a middle class standard of living."  In re Howe, 319 B.R. at 889.

In addition, ECMC has agreed to discharge a portion of the amount owed on the loan pursuant to its authority under the Code of Federal Regulations[3].  According to its post-trial brief, ECMC has unilaterally reduced Dimoyannis' outstanding debt of $107,858.13, bearing interest at 7.75%, to $20,160 at 0% interest.  *See* Post-Trial Brief of Defendant, doc. #15, at 3.

---

[3] 34 C.F.R. § 682.402(i)(v) provides that a guaranty agency opposing a petition for an undue hardship discharge may agree to discharge a portion of the amount owed on a loan if it reasonably determines that the agreement is necessary in order to obtain a judgment on the remainder of the loan.

Decision                               5

Finally, ECMC introduced evidence regarding the Department of Education's Income Based Repayment plan ("IBR"), which operates to limit the amount that an obligor is required to pay based on the obligor's income and family size. At trial, ECMC introduced evidence that no payment is required until debtor's taxable income reaches $15,000 per month (*see* ECMC exhibits D and G), suggesting that under Dimoyannis' present circumstances the IBR plan would require payments of $0. Should Dimoyannis' income increase, modest payments would be required under the IBR plan.[4]

The court finds that Dimoyannis is capable of maintaining a minimal standard of living if required to repay his student loan obligation. The court bases this finding on the evidence indicating that, at his current income level, Dimoyannis would be required to make payments under the IBR plan ranging from $0 to $47, and Dimoyannis' testimony suggesting his monthly surplus exceeds those amounts. The court therefore holds that Dimoyannis fails the first prong of the Brunner test, and is ineligible for an undue hardship discharge of his student loan obligation.

Because the court finds that Dimoyannis is capable of maintaining a minimal standard of living if his student loan debt is not discharged, the second and third prongs of the Brunner test are moot. *See* In re Howe, 319 B.R. at 889 ("The second and third prongs of the undue hardship test presuppose that a debtor has satisfied

---

[4] Note that until total income exceeds $25,000, social security income is not considered taxable income and is therefore not included in the IBR calculation. *See* 26 U.S.C. § 86.

Decision 6

the first prong"). However, even if this court were to conclude that Dimoyannis satisfied the first two Brunner elements, his failure to renegotiate his debt through the Department of Education's IBR program would weigh against a finding that he has made a good faith effort to repay the debt.

The Ninth Circuit BAP has held that good faith is measured by the debtor's efforts to negotiate a repayment plan. *See* Pennsylvania Higher Education Assistance Agency v. Birrane 287 B.R. 490, 500 (9th Cir. BAP 2002). In Birrane, the BAP found that the debtor failed the good faith prong of the Brunner test because she failed to discuss repayment options similar to IBR[5], even though the debtor in that case was unaware of such programs prior to trial. In this case, Dimoyannis testified that he is fully aware of the repayment options available to him through the IBR program, but he declined to pursue them due to feared negative tax consequences. Under these circumstances, the court cannot make a finding that Dimoyannis has made a good faith effort to repay his student loan obligation.

III. Conclusion

For the foregoing reasons, the court holds that Dimoyannis is not entitled to an undue hardship discharge of his student loan

---

[5] At the time of the Birrane decision, the income-based repayment plan offered by the Department of Education was called the Income Contingent Repayment Plan, which, like IBR, tied loan repayments to the debtor's annually adjusted income. *See* Birrane at 494-95.

Decision 7

obligations under Bankrtutcy Code §512(a)(8).  The court will issue its judgment in favor of ECMC.

**END OF DECISION**

Decision 8

|   |                                          |
|---|------------------------------------------|
| 1 | COURT SERVICE LIST                       |
| 2 | Konstantinos Anastasios Dimoyannis       |
|   | 5824 College Ave. #6                     |
| 3 | Oakland, CA 94618                        |
| 4 | Miriam E. Hiser                          |
|   | Law Offices of Miriam E. Hiser           |
| 5 | 550 Montgomery St. #650                  |
|   | San Francisco, CA 94111                  |

Decision 9